IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **BRYAN BROWN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 4:15-cv-00479-HFS |
| vs. ) | |
| ) | |
| ) | |
| **MASTEC NORTH AMERICA, INC.**, ) | |
| ) | |
| Defendant. ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES FOR WHISTLEBLOWER RETALIATION IN VIOLATION OF MISSOURI COMMON LAW

COMES NOW Plaintiff Bryan Brown ("Plaintiff" or "Mr. Brown"), and for his cause of action against Defendant MasTec North America, Inc. states as follows:

## PARTIES

1. Bryan Brown resides at 415 Caddy Court, St. Clair, Franklin County, Missouri, 63077.

2. MasTec North America, Inc. ("MasTec") is a foreign corporation that operates an engineering and construction company that serves nationwide clients.

3. At all relevant times, MasTec was Mr. Brown's employer and Mr. Brown was a full-time employee.

## JURISDICTION AND VENUE

4. Mr. Brown brought this action under the Missouri common law for the harassing and retaliatory behavior of Defendant MasTec's supervisors and managers after Mr. Brown blew the whistle on his employer for violating OSHA Regulations and refusing to participate in unsafe

construction practices. Jurisdiction and venue are proper in this District because MasTec does business in this District and the tortious acts giving rise to Mr. Brown's action occurred there.

## FACTS COMMON TO ALL COUNTS

5. MasTec offers a wide variety of services to its customers, including the installation and removal of in-ground transmission lines for telecommunication companies.

6. On or about January 10, 2014, Mr. Brown began his employment with MasTec at the Pacific, Missouri location. This particular location installs and removes transmission lines.

7. Mr. Brown initially worked as a laborer on the "pulling crew" but was later promoted to foreman after eight months.

8. The "pulling crew" removes and installs transmission lines. They work at project sites for weeks at a time and dig trenches and remove and install fiber-optic cables.

9. On or about November 20, 2014, Randal Butler, Mr. Brown's supervisor, instructed Mr. Brown and Drew Butler, another member of the "pulling crew," to report to a site in Lee's Summit, Missouri.

10. Mr. Brown and Drew Butler were told that a MasTec "excavating crew" from Minnesota (the "Minnesota Crew") would work with them on the Lee's Summit project. Chad (last name unknown), the foreman of the Minnesota Crew, was designated as the site foreman while Mr. Brown and Drew Butler worked as "excavating crew" laborers.

11. This particular project required the two crews to dig a massive trench that was approximately 6,000-8,000 feet long and six to ten feet deep.

12. When Mr. Brown arrived at the Lee's Summit project site, he observed that the Minnesota Crew had already started the trench and was not following numerous MasTec safety protocols and other safety regulations. Specifically:

a. No members of the Minnesota Crew were wearing hard hats or safety vests. OSHA Regulations 29 C.F.R. 1926.100(a) and 1926.651(d) require workers to wear hard hats and safety vests on construction sites such as this;

b. There was only one ladder in the trench despite MasTec safety protocols and safety regulations requiring multiple ladders. OSHA Regulation 29 C.F.R. 1926.651(c)(2) requires multiple ladders for trench work;

c. The Minnesota Crew was not using "shore boxes," which support trench walls and are required by safety regulations and MasTec policy. The OSHA Regulation Defendant violated for not having shore boxes is 29 C.F.R. 1926.651(i)(1); and

d. The Minnesota Crew was not using "blowers," "gas detectors" or "racks" in the manholes which are required by safety regulations and MasTec policy. The OSHA Regulation at issue here is 29 C.F.R. 1926.651(q)(1)(iii).

13. Mr. Brown immediately reported the OSHA violations to the foreman of the Minnesota Crew and urged him to follow proper safety procedures. The foreman of the Minnesota Crew told Mr. Brown to get to work and refused to correct the unsafe construction practices.

14. Mr. Brown contacted Mr. Butler and reported the unsafe and illegal construction practices by the Minnesota crew.

15. Upon information and belief, Mr. Butler notified District Manager Chuck Pritchard of the Minnesota Crew's unsafe and illegal construction practices.

16. Upon information and belief, the District Manager called the foreman of the Minnesota Crew and told him that his unsafe and illegal construction practices violated MasTec policies and OSHA Regulations.

17. After receiving the phone call from the District Manager, the Minnesota Crew stopped their unsafe and illegal construction practices. However, within two days, the Minnesota Crew resumed their unsafe and illegal construction practices.

18. Mr. Brown contacted Mr. Butler a second time and reported that the Minnesota Crew had resumed their unsafe and illegal construction practices.

19. Upon information and belief, Mr. Butler informed Dan Lennartson, the Vice President of Operations of the Minnesota branch, and Oscar Millian, the District Safety Supervisor, of Mr. Brown's concerns regarding the Minnesota Crew's continued unsafe and illegal construction practices. The District Safety Supervisor immediately called Mr. Brown and told him that the Minnesota Crew's behavior violated MasTec policy and OSHA regulations. Further, the District Safety Supervisor indicated that the safety violations were so severe that termination of the Minnesota Crew was likely.

20. The District Safety Supervisor assured Mr. Brown that he and Drew Butler would be protected as long as they did not work with the Minnesota Crew while the unsafe construction practices were taking place.

21. Following the conversation between Mr. Brown and the District Safety Supervisor, Mr. Brown refused to work on the Lee's Summit project while the Minnesota Crew continued to violate MasTec policy and safety regulations.

22. On Mr. Brown's next scheduled shift, he was informed by Mr. Butler that he had been removed from the Lee's Summit project.

23. For the next two weeks, Mr. Brown worked with various crews around the branch and was not allowed to rejoin the "pulling crew."

24. On or about February 2, 2015, Mr. Butler summoned Mr. Brown to his office and terminated Mr. Brown's employment.

25. Mr. Butler told Mr. Brown that he was terminated due to an alleged lack of steady work for the "pulling crew."

26. Upon information and belief, Mr. Butler hired a new employee for the "pulling crew" a week before Mr. Brown's termination and another new employee two days after Mr. Brown was terminated. The day following Mr. Brown's termination, he inquired about a possible job with MasTec's "Charter division."[1] Tim Jordan, Charter Division Manager, had previously told Mr. Brown that he wanted to hire him.

27. Upon information and belief, Mr. Brown was placed on a "no-rehire" list which precluded Mr. Jordan from hiring Mr. Brown.

## COUNT I - RETALIATION FOR WHISTLEBLOWING & WRONGFUL TERMINATION

28. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

29. Missouri common law forbids employers from retaliating against and discharging employees who report serious violations of law to superiors and/or refuse to participate in acts that would violate the law. This is the public policy exception to the employment at-will doctrine.

30. The acts described above constitute whistleblower retaliation and retaliatory discharge in violation of the Missouri common law.

---

[1] MasTec's Pacific, Missouri location is divided into two divisions which perform substantially similar operations: the AT&T division and the Charter division. Defendant Butler is the AT&T division coordinator and Tim Jordan is the Charter division coordinator.

31. Mr. Brown discovered that MasTec employees were engaging in unsafe construction practices that violated OSHA Regulations and company policy.

32. Mr. Brown refused to work in an unsafe manner and reported unsafe construction practices to his superiors. Specifically, Mr. Brown reported the Minnesota Crew's unsafe and illegal construction practices to Mr. Butler and the District Safety Supervisor.

33. Prior to Mr. Brown's report of a serious violation of OSHA Regulations and MasTec policy he had never been reprimanded or disciplined by MasTec.

34. After Mr. Brown blew the whistle on his employer, Defendant retaliated against him by removing him from the job site and later terminating his employment. There is a causal connection between Mr. Brown's complaints of OSHA violations and MasTec safety policy and the harassment and retaliation that followed.

35. As a direct and proximate result of Defendant's harassing and retaliatory behavior, Mr. Brown suffered lost wages and other benefits, and suffered stress and emotional upset. Mr. Brown lost sleep and was unable focus at work and was constantly worried about what else might happen to him, including termination.

WHEREFORE, Mr. Brown prays for judgment against Defendant on Count I, for a finding that he has been subjected to unlawful harassment and retaliation in violation of the Missouri common law; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' fees and expert fees and expenses; and for such other and further relief as the Court deems just and proper.

**COUNT II - RETALIATION FOR WHISTLEBLOWING AND FAILURE TO HIRE**

36. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. Mr. Brown discovered that MasTec employees were engaging in unsafe construction practices that violated OSHA Regulations and company policy. Mr. Brown refused to work in an unsafe manner and reported the unsafe construction practices to his superiors.

38. After Mr. Brown blew the whistle on his employer, Defendant retaliated against him by removing him from the job site and later terminating his employment.

39. Mr. Butler told Mr. Brown that he was terminated because MasTec no longer had steady work available for members of the "pulling crew."

40. No other members of the "pulling crew" were terminated along with Mr. Brown; in fact, MasTec hired two new employees for the "pulling crew" within two weeks of Mr. Brown's termination

41. When Mr. Brown applied for a new position within MasTec's Charter division, he was informed that he had been placed on the "no re-hire" list by Mr. Butler.

42. Prior to Mr. Brown's report of OSHA violations and MasTec safety policy, he had never been reprimanded or disciplined by MasTec.

43. There is a causal connection between Mr. Brown's complaints of unsafe construction practices and the retaliation and failure to hire that followed.

44. As a direct and proximate cause of Defendant's retaliatory behavior, Mr. Brown suffered lost wages and other benefits, and suffered stress and emotional upset.

WHEREFORE, Mr. Brown prays for judgment against Defendant on Count II, for a finding that he has been subjected to unlawful retaliation and failure to hire in violation of the Missouri common law; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' fees and expert fees and expenses; and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

WILLIAMS DIRKS DAMERON, LLC


/s/ Michael A. Williams
Michael A. Williams, MO Bar No. 47538
John F. Doyle, MO Bar No. 66626
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
jdoyle@williamsdirks.com
Tel: (816) 876-2600
Fax: (816) 221-8763

Attorneys for Plaintiff Brown

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of July, 2015, I electronically filed the foregoing with the court which will send notification of same to:

Carrie A. McAtee
Jenna Sheldon-Sherman
SHOOK HARDY & BACON, LLP
2555 Grand Blvd.
Kansas City, MO 64108-2613
(o) 816-474-6550
(f) 816-421-5547
cmcatee@shb.com
jsherman@shb.com

Attorneys for Defendant

/s/ Michael A. Williams
Michael A. Williams